UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CEMENT AND CONCRETE                 :
WORKERS DISTRICT COUNCIL            :
WELFARE FUND, *et al.*,             :
                                    :        **DECISION & ORDER**
                                    :        19-CV-2145 (WFK) (SJB)
            Plaintiffs,             :
                                    :
        v.                          :
                                    :
MANNY P CONCRETE CO., INC., *et al.*, :
                                    :
            Defendants.             :
------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**      Plaintiffs Cement and
Concrete Workers District Council Welfare Fund; Cement and Concrete Workers District
Council Pension Fund; Cement and Concrete Workers District Council Annuity Fund;
Cement and Concrete Workers Training and Apprenticeship Fund; Cement and Concrete
Workers District Council Scholarship Fund (collectively, the "Funds"); and Margaret Bowen,
in her fiduciary capacity as Fund Administrator ("Bowen"); and Cement and Concrete Workers
District Council (the "Union") (collectively, "Plaintiffs") commenced this action against
Defendants Manny P Concrete Co., Inc. ("Manny P") and Manny P Con Industries, Inc.
("Manny P Con") (collectively, "Defendants"), under the Employee Retirement Income
Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947
("LMRA") to recover required contributions and dues owed to Plaintiffs.  Before the Court is
Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.
ECF No. 104.   For the following reasons, Plaintiffs' motion for summary judgment is
GRANTED.

## BACKGROUND

### I.   Factual Background[1]

Plaintiffs Cement and Concrete Workers District Council Welfare Fund, Cement and

Concrete Workers District Council Pension Fund, Cement and Concrete Workers District

Council Annuity Fund, Cement and Concrete Workers Training and Apprenticeship Fund, and

Cement and Concrete Workers District Council Scholarship Fund (the "Funds") are jointly-

---

[1] The following facts are drawn from the parties' Local Rule 56.1 Statements, declarations, deposition
testimony, and other evidence submitted in support of the motion.  Fed. R. Civ. P. 56(c).  *See generally*
Pl. Local R. 56.1(a) Stmt. of Undisputed Material Facts (Pl. Stmt.), ECF No. 99; Def. Resp. to Pl.'s Local
R. 56.1(a) Stmt. ("Def. Stmt."), ECF No. 96.

administered, multi-employer, labor-management trust funds established and maintained

pursuant to various collective bargaining agreements ("CBAs") in accordance with the Taft-

Hartley Act §§ 302(c)(5) and (c)(6) (29 U.S.C. § 186(c)(5) and (c)(6)).  Pl. Stmt. ¶ 1.  *But see*

Def. Stmt. ¶ 1 (arguing there is insufficient information to address this claim).

The Funds are employee benefit plans and multi-employer plans within the meaning of

the Employee Retirement Income Security Act of 1974 ("ERISA).  Pl. Stmt. ¶ 2.  *But see* Def.

Stmt. ¶ 2 (declining to answer on the basis this statement is a legal conclusion).  The Funds

provide fringe benefits to eligible employees.  Employers in the construction industry contribute

to the Funds on behalf of these employees pursuant to CBAs between themselves and Cement

and Concrete Workers District Council (the "Union").  Pl. Stmt. ¶ 4; Def. Stmt. ¶ 4.  Plaintiff

Margaret Bowen is the Administrator of the Funds and is a fiduciary within the meaning of

ERISA.  Pl. Stmt. ¶ 6.  *But see* Def. Stmt. ¶ 6 (arguing there is insufficient information to admit

or deny this claim).

The Union is a labor organization under the Taft-Hartley Act and represents employees in

an industry affecting commerce as defined by the Taft-Hartley Act and ERISA.  Pl. Stmt. ¶ 7;

Def. Stmt. ¶ 7 (declining to answer on the basis this statement is a legal conclusion).  The Union

enters into CBAs  with various employers in the building and construction industry on behalf of

itself and its constituent local unions, Laborers' Local 6A, 18A and 20, as the representative of

laborers employed by the employers who perform work covered by the CBA.  Pl. Stmt. ¶ 8; Def.

Stmt. ¶ 8.  The Union's CBAs apply to unskilled and semi-skilled construction work performed

by laborers.  Pl. Stmt. ¶ 9; Def. Stmt. ¶ 9.  Pursuant to the CBAs, the Union checkoffs from

employees who authorize their employers to deduct from their wages, dues, and contributions to

the Organizer Fund, and the New York State Laborers' Political Action Committee

("NYSLPAC") and remit the checkoffs to the Union.  Pl. Stmt. ¶ 10; Def. Stmt. ¶ 10.

Defendant Manny P Concrete Co., Inc. ("Manny P") is a for-profit domestic corporation operating in the State of New York.  Pl. Stmt. ¶¶ 11-13; Def. Stmt. ¶¶ 11-13 (declining to address the issue of whether Manny P is an employer under ERISA, and thus whether Manny P is an employer in an industry affecting commerce under the LMRA, on the grounds this poses a question of law).  Manuel Pereira ("Pereira") is and has been the sole owner, shareholder, principal, director, and manager of Manny P since its formation in 1996.  Pl. Stmt. ¶ 12; Def. Stmt. ¶ 12.

Defendant Manny P Con Industries, Inc. ("Manny P Con") is a for-profit domestic corporation operating in the State of New York.  Pl. Stmt. ¶ 14; Def. Stmt. ¶ 14 ( declining to address the issue of whether Manny P Con is an employer under ERISA and thus whether Manny P Con is an employer in an industry affecting commerce under the LMRA  on the grounds this poses a question of law).  Specifically, Manny P Con is a contractor  in the construction industry based in New York City.  Pl. Stmt. ¶ 15; Def. Stmt. ¶ 15.

Pereira is the sole owner, shareholder, principal, director, and manager of Manny P Con. Pl. Stmt. ¶ 16; Def. Stmt. ¶ 16.  Pereira is also the sole shareholder and principal officer of Manny P.  Pl. Stmt. ¶ 17; Def. Stmt. ¶ 17.  Manny P and Manny P Con both are contractors in the construction industry, and both share common purposes, operations, and lines of business. Pl. Stmt. ¶ 18.  *But see* Def. Stmt. ¶ 18 (denying this claim).  There are  myriad connections linking Manny P and Manny P Con.  Both entities share a certified public accountant who prepares their various tax forms.  Pl. Stmt. ¶ 19; Def. Stmt. ¶ 19.  Indeed, Pereira was the sole person responsible for work performed by Manny P employees as well as the sole person responsible for Manny P Con's labor relations and payroll operations for Manny P Con during

the Audit Period.  Pl. Stmt. ¶¶ 20-21; Def. Stmt. ¶¶ 20-21.  Additionally, both businesses share

an address for service of process and Pereira is the chief executive officer of both.  Pl. Stmt. ¶¶

22-23; Def. Stmt. ¶¶ 22-23.

      In 1997, Manny P entered into a CBA with the Union.  Pl. Stmt. ¶ 24; Def. Stmt. ¶ 24.  In

2013, Manny P executed a Letter of Assent agreeing to be bound by the Union's CBA pursuant

to the Project Labor Agreement Covering New Construction and Renovation Work at the CUNY

Brooklyn Performing Arts Center Addition ("PLA").  Pl. Stmt. ¶ 26; Def. Stmt. ¶ 26.  On or

about April 3, 2014, Manny P entered into an independent CBA with the Union.  Pl. Stmt. ¶ 27;

Def. Stmt. ¶ 27.  The CBA was subject to automatic renewal on an annual basis unless one of the

parties to the agreement provided written notice to the other of their desire to amend or terminate

the agreement between 60 and 90 days prior to the expiration of the CBA.  Pl. Stmt. ¶ 28; Def.

Stmt. ¶ 28.  The parties agree neither Plaintiffs nor Defendants ever requested to amend or

terminate the CBA.  Pl. Stmt. ¶ 29; Def. Stmt. ¶ 29.

      Pursuant to the terms of the CBA, Manny P is required to make fringe benefit

contributions to the Funds for every hour of work performed by its employees within the trade

and geographic jurisdiction of the CBA ("Covered Work").  Pl. Stmt. ¶ 31; Def. Stmt. ¶ 31.  The

CBA also requires Manny P to deduct and remit authorized dues, Organizer Fund and

NYSPLAC constructions, from the wages of employees performing Covered Work, submit the

Funds contributions and dues checkoffs on a weekly basis for Covered Work, and permit the

Funds and/or their designated representatives to audit its books and records.  Pl. Stmt.  ¶¶ 32-34;

Def. Stmt. ¶¶ 32-34.  Pursuant to the CBA, Manny P was required to maintain payroll and other

records necessary for audits for a minimum of six years.  Pl. Stmt. ¶ 35; Def. Stmt. ¶ 35.  With

respect to the performance of Covered Work under the name of another business, and where the

two enterprises have substantially identical ownership, the CBA dictates its terms shall apply to all such work performed by the other business.  Pl. Stmt. ¶ 36; Def. Stmt. ¶ 36.  Finally, the CBA names Manny P responsible for complying with the CBA and liable for the subcontractor's payment of wages, contributions, and dues checkoffs if Manny P subcontracted Covered Work to a third party.  Pl. Stmt. ¶ 37; Def. Stmt. ¶ 37.

The principal issue in this case is whether Defendants failed to pay required contributions and dues checkoffs, and thus whether Defendants violated their CBA obligations, the Funds' respective trust agreements, the LMRA, and ERISA.  Third Amended Complaint ("3rd Am. Compl.") at 2.  On March 28, 2019, the Funds demanded Manny P permit an audit to be performed on its books and records for the period beginning March 25, 2015 by the accounting firm Schultheis & Panettieri, LLP ("S&P").  Pl. Stmt. ¶ 44; Def. Stmt. ¶ 44.  After Manny P failed to cooperate with the requested audit, Pl. Stmt. ¶ 45; Def. Stmt. ¶ 45 (denying this claim), Plaintiffs initiated this action on April 11, 2019.  Pl. Stmt. ¶ 46; Def. Stmt. ¶ 46.

Following the initiation of this action, Manny P allowed S&P Auditors to conduct an audit of its books and records for the period of March 25, 2015 until December 31, 2018.  Pl. Stmt. ¶ 47; Def. Stmt. ¶ 47.  After Manny P initially failed to provide certain documents necessary to complete the audit, Pl. Stmt. ¶ 49; Def. Stmt. ¶ 49 (denying this claim), Manny P provided the remaining documents following a demand for the materials by Plaintiffs' counsel. Pl. Stmt. ¶¶ 50-52; Def. Stmt. ¶¶ 50-52.  The audit ultimately revealed Manny P owed $617,383.97 in fringe benefit contributions and $76,924.38 in dues checkoffs for a total deficiency of $694,308.35 for the period spanning March 25, 2015 through December 31, 2018. Pl. Stmt. ¶ 63; Def. Stmt. ¶ 63 (conceding these were the Auditor's findings).  The audit included (1) $297,587.97 in principal delinquent contributions and checkoffs based on Covered Work

performed by twelve Manny P employees, (2) $44,535.74 in delinquent contributions and checkoffs based upon $67,750.00 of payments to related entity Manny P Con for Covered Work, and (3) $352,184.64 in delinquent contributions based upon $516,077.17 of payments to Perkan Concrete Corp for Covered Work ("Perkan").  Pl. Stmt. ¶¶ 65-67; Def. Stmt. ¶¶ 65-67.

## II.    Procedural Background

On September 6, 2019, Plaintiffs filed their Amended Complaint.  ECF No. 18.  On September 30, 2019, Plaintiffs served their first request for  production of documents on Manny P.  Pl. Stmt. ¶ 68; Def. Stmt. ¶ 68.  Then, on September 30, 2019, Plaintiffs served their first set of interrogatories on Manny P.  Pl. Stmt. ¶ 69; Def. Stmt. ¶ 69.  Manny P initially failed to timely respond to either request, Pl. Stmt. ¶ 71; Def. Stmt. ¶ 71, and again failed to timely comply after the Court ordered it to do so in January 2020.  ECF No. 25; Pl. Stmt. ¶¶ 77-78; Def. Stmt. ¶¶ 77-78.  Eventually, Manny P provided partial responses to Plaintiffs' document requests on January 27, 2020 but did not provide written answers to the request for documents or the first set of interrogatories.  Pl. Stmt. ¶ 79; Def. Stmt. ¶ 79.

On March 18, 2020, Plaintiffs filed a Second Amended Complaint, adding claims based on a revised audit conducted by S&P.  Pl. Stmt. ¶¶ 81-82; Def. Stmt. ¶¶ 81-82.  Manny P provided written responses to Plaintiffs' first set of interrogatories on January 30, 2020, but still failed to provide written responses to Plaintiffs' first request for documents.  Pl. Stmt. ¶¶ 83-84; Def. Stmt. ¶¶ 83-84.

Plaintiffs served their second request for production of documents and second set of interrogatories to Manny P on January 14, 2020.  Pl. Stmt. ¶ 85; Def. Stmt. ¶ 85.  Manny P did not respond to these requests, and on March 27, 2020, the Court compelled Manny P and Manny P Con to comply with the subpoena and produce discovery by April 15, 2020.  Pl. Stmt. ¶¶ 86-

89; Def. Stmt. ¶¶ 86-89.  Again, Defendants failed to timely comply.  Pl. Stmt. ¶ 90; Def. Stmt. ¶ 90.

On April 27, 2020, Plaintiffs served their requests for admission pursuant to Rule 36 of the Federal Rules of Civil Procedure, which included questions concerning the accuracy of the audit report.  Pl. Stmt. ¶ 94; Def. Stmt. ¶ 94.  To this day, Manny P has never objected or otherwise responded to these requests.  Pl. Stmt. ¶ 95; Def. Stmt. ¶ 95.  Neither has Manny P requested an extension of time to respond to the requests for admission.  Pl. Stmt. ¶ 96; Def. Stmt. ¶ 96.

On June 19, 2020, Plaintiffs moved for an order of contempt and an award of sanctions against Manny P and Manny P Con for their persistent failure to produce responses to Plaintiffs' outstanding discovery requests and comply with prior Court orders directing them to do so.  ECF Nos. 45, 46.  On December 18, 2020, the Court partially granted Plaintiffs' pending motions for contempt and sanctions against Manny P, Manny P Con, and the Perkan Entities—who had also failed to respond to Plaintiffs' discovery requests—and ordered: "Defendant [Manny P] and Manny P Con are precluded from relying upon any documents in their possession, custody or control that they have not yet produced in discovery."  Pl. Stmt. ¶ 105; Def. Stmt. ¶ 105.  On November 5, 2020, Manny P produced written responses to Plaintiffs' first request for documents, as well as written responses and responsive documents to Plaintiffs' second request for documents and Plaintiffs' second set of interrogatories to Manny P.  Pl. Stmt. ¶ 103; Def. Stmt. ¶ 103.

On March 30, 2021, S&P Auditors issued the second revised audit ("revised audit"), which revealed Manny P owed $307,646.27 in fringe benefit contributions and $35,193.68 in dues checkoffs, amounting to a total delinquency of $342,839.95 for the period of March 25,

2015 through September 30, 2020.  Pl. Stmt. ¶ 107; Def. Stmt. ¶ 107 (admitting these were the Auditor's findings).

On January 8, 2021, Plaintiffs filed a Third Amended Complaint, in which they added Manny P Con as a defendant and argued Manny P Con is Manny P's alter ego and/or a single employer and is therefore jointly and severally liable for Manny P's delinquent contributions, checkoffs, and ancillary contractual and statutory damages.  3rd Am. Compl., ECF No. 88.

On April 5, 2021, Plaintiffs served their First Document Request and First Set of Interrogatories on Manny P Con.  Pl. Stmt. ¶ 110; Def. Stmt. ¶ 110.  On June 22, 2021, Plaintiffs served requests for admission on Manny P Con.  Pl. Stmt. ¶ 111; Def. Stmt. ¶ 111.  Manny P Con provided responses to these requests on July 15, 2021.  Pl. Stmt. ¶ 113; Def. Stmt. ¶ 113. Discovery in this case closed on August 13, 2021.  Text Order Entry, March 1, 2021.

On October 8, 2021, Plaintiffs served Defendants with the instant motion for summary judgment.  ECF No. 98.  Defendant filed in opposition to the motion on November 3, 2021.  ECF No. 95.  Plaintiffs replied in support of their motion on November 19, 2021.  ECF No. 104.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record.  Fed. R. Civ. P. 56(a)–(c).  A genuine dispute exists if a reasonable jury could find in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001).  Courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant" when evaluating summary judgment motions.  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted).  The role of the district court is not to weigh the

evidence and to determine the truth of the matter, but rather to answer "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 249-50.

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "'specific facts showing that there is a genuine issue for trial.'" *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence" in support of the non-movant will not alone defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmov[ant]'s case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

"A party's admissions pursuant to Rule 36, including admissions derived from a party's failure to respond, may be used for Rule 56 summary judgment." *See Paniagua v. Walter Kidde Portable Equip., Inc.*, 183 F. Supp. 3d 473, 482 (S.D.N.Y. 2016) (Engelmayer, J.); *see also Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 471 (S.D.N.Y. 2008) (McMahon, J.), *on reconsideration in part* (May 12, 2008) (citing *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34, (1988) ("For the purposes of summary judgment, matters admitted under [R]ule 36(a) of the Federal Rules of Civil Procedure may be used for summary judgment under [R]ule 56."));  *S.E.C. v. Dynasty Fund, Ltd.*, 121 F. App'x 410, 411 (2d Cir. 2005).

**DISCUSSION**

Plaintiffs argue because Manny P failed to respond to Plaintiffs' requests for admission, Manny P has therefore admitted to the matters addressed therein, and thus Plaintiffs are entitled to summary judgment.  *See* Pl. Mem. of Law in Support of Mot. for Summary J. ("Pl. Mem.") at 13-14, ECF No. 104.  Plaintiffs argue further Manny P cannot meet its burden to produce evidence contradicting the findings of the revised audit, which revealed Manny P's failure to maintain adequate records.  *Id.* at 16-19.  Plaintiffs also argue Manny P Con is jointly and severally liable for Manny P's damages.  *Id.* at 19-27.  Finally, Plaintiffs argue they are entitled to summary judgment and statutory damages as a matter of law.  *Id.* at 27-29.

In response, Defendants concede they "do not contest they have some liability to the Plaintiff funds."  *See* Def. Mem. of Law in Opposition to Mot. for Summary J. ("Def. Opp.") at 5, ECF No. 95.  However, Defendants contend five of the individuals included in the audit performed drainage work, rather than Covered Work, and thus Defendants did not owe contributions  to the Funds.  *Id.*  Furthermore, Defendants argue Manny P's failure to respond to Plaintiffs' requests for admissions should not be used as a basis to find them liable.  *Id.*  Notably, Defendants do not address any of Plaintiffs' remaining arguments.

For the following reasons, the Court finds Defendants have admitted the CBA was in effect during the relevant period and the findings of the revised audit, which uncovered Defendants' delinquent payments in the amount of $342,839.95, were accurate.  Accordingly, the Court finds Defendants breached their obligations under the CBA and ERISA to timely pay these contributions.  Further, the Court finds Manny P Con is jointly and severally liable for Manny P's damages under the single employer doctrine as well as the alter ego doctrine.  Finally, the Court finds Plaintiffs are entitled to the damages in the form of unpaid contributions, interest on the unpaid contributions, liquidated damages, audit fees, and reasonable attorneys' fees and

expenses.  Accordingly, Plaintiffs' motion for summary judgment is GRANTED in its entirety.

**I.    Defendants have Admitted Liability**

Plaintiffs served its request for admissions on Manny P on April 27, 2020.  Pl. Stmt. ¶ 94; Def. Stmt. ¶ 94.  To date, Defendants have never responded to these requests, nor have they sought an extension of time to do so.  Pl. Stmt. ¶¶ 95-96; Def. Stmt. ¶¶ 95-96.

"By operation of Rule 36(a)(3), '[a] matter is admitted unless, within 30 days after being served [with Requests for Admissions], the party to whom the request is directed serves on the requesting party a written answer or objection ...'".  *J & J Sports Prods., Inc. v. Belliard*, 18-CV-5088 (DLI) (RER), 2022 WL 1748626, at *5 (E.D.N.Y. Jan. 25, 2022) (Reyes, M.J.) (quoting Fed. R. Civ. P. 36(a)(3)).  Fed. R. Civ. P. 36 is intended "to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact."  *T. Rowe Price Small-Cap Fund, Inc., v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) (Katz, M.J.).  The parties may stipulate to a longer or shorter time period to respond, pursuant to Rule 29, or the Court may otherwise order an adjusted schedule.  *See Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, 16-CV-4762 (LTS) (KNF), 2021 WL 101088, at *6 (S.D.N.Y. Jan. 12, 2021) (Reyes, M.J.) (citing Fed. R. Civ. P. 36(a)(3)).

The Court need not consider all matters to which a party does not respond to be admitted automatically.  *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL–CIO v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y. 1996) (Conner, J.).  Rule 36(b) permits the Court, on motion, to "permit an admission to be withdrawn or amended if (1) 'it would promote the presentation of the merits of the action' (2) without 'prejudic[ing] the requesting party in maintaining or defending the action on the merits.'"  *Paniagua*, 183 F. Supp. 3d at 482 (quoting Fed. R. Civ. P.

36(b)).  This decision is at the discretion of the court.  "The Second Circuit has held that, because

of the permissive language of the rule, a court is not required to permit a party to withdraw or

amend an admission, 'even if both the merits and prejudice issues cut in favor of the party'

seeking to withdraw or amend an admission." *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 21-

CV-5714 (VEC), 2022 WL 2901402, at *2 (S.D.N.Y. July 22, 2022) (Caproni, J.) (citing

*Donovan v. Carls Drug Co.*, 703 F.2d 650, 651-52 (2d Cir. 1983)).

Plaintiffs argue the admissions Defendants made by failing to respond to Plaintiffs'

requests for admissions provide a basis for summary judgment in this case.  Pl. Mem. at 17.

Namely, Plaintiffs suggest the requests concerning the accuracy of the audit findings and the

existence of the CBA during the relevant period are dispositive evidence summary judgment is

warranted here.  *Id.*  In response, Defendants argue their failure to respond to Plaintiffs' first set

of requests for admissions is not fatal because the requests in question sought legal conclusions

and involved issues critical to the dispute, such that Defendants were not required to respond.

Def. Opp. at 9.

Certain categories of questions are considered improper in requests for admissions,

including those that would "force the defendant to 'admit' [legal conclusions]" which would

"frustrate the purposes for which Rule 36 was drafted." *Coach, Inc. v. Horizon Trading USA

Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) (Engelmayer, J.) (citing *Williams v. Krieger*, 61

F.R.D. 142, 144 (S.D.N.Y. 1973)).  Such requests for admission will not be deemed admitted if

not responded to.  *Id.*  However, the requests in question do not fall into this category as they

seek only admissions of *fact*, which are appropriate under Rule 36.  *See Buffalo Laborers

Welfare Fund v. Di Pizio Constr. Co., Inc.*, 318 F. Supp. 3d 591, 597 (W.D.N.Y. 2018)

(Wolford, J.) (finding the plaintiff's requests for admission, asking whether the defendant was

bound by a CBA and whether an audit correctly found a deficiency with respect to the defendant's fringe benefits contributions and dues checkoffs, were proper factual questions, and concluding those statements were admitted as the defendant had failed to timely respond to them).  In addition, if Defendants truly believed the requests for admission sought legal conclusions improperly, Defendants were entitled to seek the issuance of a protective order from the Court.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).  However, as previously stated, Defendants took no such action.

Defendants offer the medical issues their former counsel was experiencing as an excuse for failing to timely respond to Plaintiffs' requests for admission.  Def. Opp. at 5.  However, as Plaintiffs note, Defendants' current counsel took over the case in August 2020.  Pl. Reply Br. at 6.  On August 13, 2020, Plaintiffs informed defense counsel of all discovery requests up to that point, which included the outstanding requests for admission.  *Id.*; Mele Decl., Ex. 3, ECF No. 106.  Yet, defense counsel continued to ignore their requests for admission through the close of discovery—an entire year later.  Nor did Defendants at any point request an extension of time to respond to the request of admissions.  Defendants now claim their failure to reply to the requests cannot be considered an admission on those points.  However, to permit such an outcome would subvert the purposes of Rule 36 and greatly prejudice Plaintiffs considering discovery closed nearly two years ago.  Thus, the Court declines to do so.

Plaintiffs also point to further admissions made by Defendants in their Counter Rule 56.1 Statement.  Pl. Reply Mem. at 5.  In their Counter 56.1 Statement, Defendants concede they owe $143,832.24 in fringe benefit contributions and dues checkoffs for 4,615.5 hours of Covered Work by admitting the statements made in paragraphs 254-255, 258-263 and 272-277 in Plaintiffs' Rule 56.1 Statement.  Def. Stmt. ¶ 3.  Furthermore, Defendants conceded the

$67,750.00 in payments from Manny P to Manny P Con were payments for 1,594 unreported hours of Covered Work performed by Manny P Con, for which Manny P owes $44,535.74 in fringe benefit contributions and dues checkoffs when they stated they admit paragraphs 278-279. *Id.*

Having reviewed the statements in question, the Court finds Defendants' implied admissions in failing to respond to Plaintiffs' requests for admissions, together with its direct admissions described in its Counter 56.1 Statement, provide a sufficient basis for summary judgment.

## II.     Defendants Are Liable under ERISA and the LMRA

Plaintiffs argue Defendants violated their CBA obligations, the Funds' respective trust agreements, the LMRA, and ERISA through their failure to pay fringe benefit contributions, dues, and Organizer Fund and NYSLPAC contributions for Covered Work.

Plaintiffs allege Defendants owe both unpaid ERISA contributions pursuant to Section 515 of ERISA and unpaid non-ERISA contributions under the terms of a CBA established pursuant to Section 301 of the LMRA.  Pl. Mem. at 5.  As discussed, by failing to respond to Plaintiffs' requests for admission, served more than two years ago, Defendants have admitted to the requests concerning the accuracy of the audit's findings, which indicate Manny P failed to report Covered Work to the Funds, and the applicability of the CBA during the relevant period. Thus, the Court finds Defendants breached both the terms of their agreement and the statutory obligations under the LMRA and ERISA.

On July 9, 2013, Manny P executed a Letter of Assent agreeing to be bound by the Union's CBA.  Angelone Decl., Ex. 3, ECF No. 102.  Then, on or about April 3, 2014, Manny P entered into a CBA with the Union by executing the 2011-2014 Independent Employer

Agreement.  Angelone Decl., Ex. 1, ECF No. 102.  The CBA lays out Manny P's obligations to

the Funds with respect to Covered Work, which include (1) making fringe benefit contributions

and (2) deducting and remitting to the Union dues and Organizer Fund and NYSLPAC

contributions.  *Id.*  The CBA also provides signatory contractors are liable for the payment of

fringe benefit contributions, dues checkoffs, and Organizer Fund and NYSLPAC contributions

owed by related businesses, which include non-signatory businesses performing Covered Work

on behalf of the signatory contractor.  *Id.*  Finally, the CBA's "evergreen clause" notes the

duration of the contract, and provides the CBA remained in full force from July 1, 2011 through

June 30, 2014, and stated further the agreement would be automatically renewed and extended in

the absence of action by either party.  *Id.*

Section 515 of ERISA provides: "Every employer who is obligated to make contributions

to a multiemployer plan under the terms of the plan or under the terms of a collectively

bargained agreement shall, to the extent not inconsistent with law, make such contributions in

accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Further, Section 301 of the LMRA provides federal jurisdiction for suits involving the "violation

of contracts between an employer and a labor organization representing employees in an industry

affecting commerce."  29 U.S.C. § 185(a).

In support of their motion for summary judgment, Plaintiffs submitted a declaration from

Viorel Kuzma, who was S&P's director in charge of the Fund's payroll audit program at the time

S&P conducted the audit of Manny P's books and records.  Kuzma Decl., ECF No. 103.

Plaintiffs have also submitted the CBAs, relevant trust agreements, and audit reports prepared by

S&P.  Angelone Decl., Exs. 1-4, ECF No. 102; Kuzma Decl., Exs. 3-6, ECF No. 103.  Plaintiffs'

evidence is sufficient to establish Manny P was subject to a CBA with Plaintiffs.  Moreover,

Plaintiffs have established Defendant failed to make the non-ERISA payments required in accordance with the CBA.

Furthermore, Defendant Manny P, both through its Rule 36 admissions and Counter 56.1 Statement, has acknowledged the terms of the CBA and has further admitted, since the CBA went into effect, neither party has acted in such a way that would terminate or change the terms of the CBA.  Def. Stmt. ¶¶ 24-29, 31-36, 38; Lyons Decl., Ex. 21, ECF No. 100.  Furthermore, Manny P has admitted to breaching these terms by conceding to the accuracy of the findings of the audits—the first of which revealed Manny P was delinquent in the remittance of fringe benefit contributions and dues checkoffs for Covered Work for the period of March 25, 2015 through December 31, 2018.  Pl. Stmt. ¶¶ 63-67; Def. Stmt. ¶¶ 63-67.  The revised audit revealed Manny P's fringe contributions and dues checkoffs debt extended from March 25, 2015 through September 30, 2020.  Pl. Stmt. ¶ 80; Def. Stmt. ¶ 80.  Additionally, the Court finds Manny P's Rule 36 admissions provide further support for these findings.  Angelone Decl., Ex. 1, ECF No. 102.

Ultimately, the Court finds Plaintiffs have established there exists no genuine issue of material fact as to Manny P's liability for deficient contributions owed to Plaintiffs under Section 515 of ERISA and Section 301 of the LMRA.  Accordingly, Plaintiffs' motion for summary judgment on this issue is GRANTED.

### III.   Defendant Manny P Con is Jointly and Severally Liable

Plaintiffs also argue Manny P Con is jointly and severally liable for Manny P's damages as a single employer and under the theory of alter ego.  Pl. Mem. at 19-27.  Plaintiffs' argument is based on two doctrines: "single employer" and "alter ego" liability.  Both doctrines typically involve "issues of fact, making them inappropriate for summary judgment unless the factfinder

could reach only one reasonable conclusion based on the undisputed facts." *Kilkenny as Trustees of Constr. Council Loc. Union 175 Pension Fund v. Manco Enterprises, Inc.*, 20-CV-4765-FB-TAM, 2023 WL 2734805, at *3 (E.D.N.Y. Mar. 31, 2023) (Block, J.).  In their opposition, Defendants neglected to address this argument entirely.  The record establishes Manny P and Manny P Con constitute a single employer and that Manny P and Manny P Con are alter egos of one another.  As such, Manny P Con is bound to the Manny P-signed CBA, and Defendants are jointly and severally liable.

1. <u>Single Employer Liability</u>

"The single employer doctrine is an exception to the doctrine of limited liability in corporate law, which allows corporate entities to escape liability for the acts of a separate, related entity . . . ." *Carner v. MGS–576 5th Ave. Inc.*, 992 F. Supp. 340, 350 (S.D.N.Y.1998) (Motley, J.).  "Under the single employer doctrine, two nominally distinct enterprises will be joint[ly] and severally liable under the CBA signed by only one when the two act as a 'single integrated enterprise.'" *Ferrara v. Oakfield Leasing Inc.*, 904 F. Supp. 2d 249, 260 (E.D.N.Y. 2012) (Spatt, J.) (citing *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996), *as amended* (May 9, 1996)).  The Court must consider several factors to determine whether two entities act as a single integrated enterprise, including: "interrelationship of operations, common management, centralized control of labor relations and common ownership," as well as "the use of common office facilities and equipment and family connections between or among the various enterprises." *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965); *see also Lihli*, 80 F.3d at 747.  "[N]ot every factor need be present, and no particular factor is controlling." *Lihli*, 80 F.3d at 747.  This analysis is heavily dependent upon the facts of each case and ultimately depends on the "absence of an arm's length

relationship found among unintegrated companies." *Id.* (internal quotation marks omitted).

In the instant case, Manny P and Manny P Con's ownership and control are both easily traced to Manuel Pereira. As previously described, Pereira is the sole owner, shareholder, principal, director, and manager of Manny P Con. Pl. Stmt. ¶ 16; Def. Stmt. ¶ 16; Lyons Decl. Pereira is also the sole shareholder and principal officer of Manny P. Pl. Stmt. ¶ 17; Def. Stmt. ¶ 17. Pereira is the chief executive officer of both Manny P and Manny P Con. Pl. Stmt. ¶ 23; Def. Stmt. ¶ 23. Likewise, Pereira controls the work performed by Manny P's employees and Manny P Con's labor relations and payroll. Pl. Stmt. ¶¶ 20-21; Def. Stmt. ¶¶ 20-21. In sum, there is ample evidence both entities are owned and controlled by the same individual, Manuel Pereira.

Beyond their ownership and management structure, Plaintiffs offered sufficient evidence to demonstrate Manny P and Manny P Con's operations are interrelated. Manny P and Manny P Con share a certified public accountant. Pl. Stmt. ¶ 19; Def. Stmt. ¶ 19. Both Manny P and Manny P Con also share an address for the purposes of service of process. Pl. Stmt. ¶¶ 19, 22; Def. Stmt. ¶¶ 19, 22. *See Labarbera v. Cretty Enterprises, Inc.*, 03-CV-6112 (DRH) (ARL), 2007 WL 4232765, at *2 (E.D.N.Y. Nov. 28, 2007) (Hurley, J.), *on reconsideration sub nom. LaBarbera v. Cretty Enterprises, Inc.*, 03-CV-06112 (DRH), 2008 WL 276517 (E.D.N.Y. Jan. 29, 2008) (finding single employer liability as a matter of law between two businesses that shared an accountant and a business address).

Defendants do not dispute Plaintiffs' argument regarding joint and several liability in their opposition. Based on the undisputed facts, the Court finds no rational finder of fact could conclude there was an "arms-length" relationship between Manny P and Manny P Con. "Businesses comprising a 'single employer/single unit' for labor law purposes are jointly and

severally liable for each other's obligations under collective bargaining agreements." *Duffy v. Mod. Waste Servs. Corp.*, 09-CV-0655 (JS) (ARL), 2011 WL 573564, at *6 (E.D.N.Y. Feb. 14, 2011) (Seybert, J.).  Therefore. because Manny P was bound by the CBA, there is joint and several liability for Covered Work performed by the employees of both Manny P and Manny P Con.

      2.  <u>Alter Ego Liability</u>

      "Like single employer liability, alter ego liability binds one company to the CBAs signed by another. *Kilkenny*, 2023 WL 2734805, at *4 (citing *Lihli*, 80 F.3d at 748).  "The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" *Ret. Plan OF UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (citation omitted).  Two entities may be considered the alter egos of each other when they share "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Lihli*, 80 F.3d at 748.  However, unlike the single employer doctrine, the alter ego doctrine asks an additional question: whether there is a "disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." *Id.*  "In addition, anti-union animus may be germane to the analysis, or even sufficient to find that two companies are alter egos, but anti-union motivation is not necessary." *LaBarbera v. C. Volante Corp.*, 164 F. Supp. 2d 321, 327 (E.D.N.Y. 2001) (Gershon, J.) (citing *Goodman*, 741 F.2d at 12).  "[T]he test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case, while recognizing that the following factors are important: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers,

supervision, and ownership." *Kombassan Holding*, 629 F.3d at 288 (2d Cir. 2010).

Under the alter ego doctrine, Manny P Con is liable for the delinquent trust fund contributions of Manny P.  Manny P and Manny P Con share a business purpose, as they are both contractors in the construction industry and operate in New York City.  Pl. Stmt. ¶¶ 13, 15; Def. Stmt. ¶¶ 13, 15.  The businesses also shared a pool of employees, who worked for both companies—even within the same week.  Pl. Stmt. ¶¶ 123-124; Def. Stmt. ¶¶ 123-124. Furthermore, Pereira owned, managed, and supervised the employees of both companies.  Pl. Stmt. ¶¶ 20-21; Def. Stmt. ¶¶ 20-21.

To demonstrate Defendants attempted to avoid the obligations of the CBA through sham transactions, Plaintiffs allege payments were intentionally funneled "from Manny P to Manny P Con in order to pay employees on Manny P's payroll for performing Covered Work which was not reported to the Funds, without any corroborating documentation or even an attempt at explaining the purpose of said payments."  Pl. Mem. at 26.  According to Plaintiffs, these transfers, combined with the inability of either Manny P or Manny P Con to provide an explanation for them, "clearly constitute[s] sham transactions in which the companies were attempting to avoid their obligations under the CBA."  Pl. Mem. at 26.  The Court finds Plaintiffs have provided sufficient evidence suggesting Manny P and Manny P Con's transactions, for which they have been unable to supply an explanation over the course of years of litigation, are in fact sham transactions designed to avoid the obligations of the CBA.  Pl. Mem. at 25-26.  In sum, there is no issue of material fact that Manny P Con adopted the CBAs through its course of conduct, that Manny P and Manny P Con were a single employer, and that Manny P Con is the alter ego of Manny P.

## IV.    Damages Covered by ERISA and the CBA

The final question before the Court is the issue of damages.  Plaintiffs seek to recover: (1) unpaid fringe benefit contributions and checkoffs, (2) pre-judgment interest on the unpaid contributions, (3) liquidated damages, (4) audit fees, and (5) reasonable attorneys' fees and costs. Plaintiffs are entitled to all relief sought.  See 29 U.S.C. § 1132(g)(2) (stating a successful plaintiff under Section 515 of ERISA is entitled to unpaid contributions, interest on those contributions, liquidated damages, attorney's fees and costs, and "such other legal or equitable relief as the court deems appropriate"); *see also Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Intercounty Paving Assocs. of New York, LLC*, 19-CV-0733 (RER), 2020 WL 6826197, at *3 (E.D.N.Y. Nov. 20, 2020) (Reyes, J.).

The revised audit of Defendants' books and records revealed Defendants were delinquent in the total amount of $342,839.95 in unpaid fringe benefits contributions ($307,646.27) and dues checkoffs ($35,193.68).  Notably, in their opposition to Plaintiffs' motion for summary judgment, Defendants dispute neither Plaintiffs' requests for damages nor Plaintiffs' calculations.  The Court finds Plaintiffs have properly calculated this amount as required by both the CBA and ERISA.

Next, Plaintiffs seek to recover interest on the unpaid contributions.  Pursuant to ERISA, statutory damages must be awarded in the amount equal to that of the interest due on the unpaid principal.  29 U.S.C. § 1132(g)(2)(C)(i); *see also Virga*, 590 F. Supp. 2d at 473.  "This award is mandatory even if not provided explicitly by the terms of the CBA."  *Virga*, 590 F. Supp. 2d at 473; *see also Bricklayers Dist. Council Welfare Fund v. Pony Masonry Constr. Co.*, 92-CV-1663, 1995 WL 693262 at *3, 1995 U.S. Dist. LEXIS 17501 at *8 (S.D.N.Y., Nov. 22, 1995)

(Hurd, J.).  Additionally, the CBA obligates Manny P to pay interest at a rate of 18% per year on delinquent contributions and due checkoffs.  Angelone Decl., Ex. 1.  Thus, Plaintiffs are awarded interest on the principal delinquency from the date contributions were initially due until the date upon which this judgment is entered.

Plaintiffs argue they are entitled to liquidated damages in the amount of $68,567.99 equal to "20% of the delinquent fringe benefit contributions and checkoffs."  Pl. Mem. at 28.  Pursuant to section 502(g)(2)(C) of ERISA, Plaintiffs are entitled to statutory damages in "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court."  29 U.S.C. § 1132(g)(2)(C).  Additionally, the CBA provides that employers failing to make timely payments of contributions are liable for liquidated damages of 20%.  Angelone Decl., Ex. 1.  Because an award of liquidated damages is mandatory under Section 502(g)(2) and Plaintiffs seek an amount less than the maximum permitted under the statute, Plaintiffs' request for liquidated damages is granted as well.

Plaintiffs also seek to recover the actual costs of the audits pursuant to ERISA and the CBA for a total amount $10,161.00.  Pl. Mem at 28.  Under ERISA, Defendants are liable for audit fees if the audit reveals a deficiency in payments.  29 U.S.C. § 1132(g)(2)(E).  "Courts in the Second Circuit have 'routinely found that audit fees are recoverable under this provision.'"  *Annuity*, 2020 WL 6826197, at *3 (citation omitted).  Such request must be accompanied with records to support the expense.  *Id.*  In support for their request of audit fees, Plaintiffs submitted a report detailing the cost of conducting the audits.  Kuzma Decl., Ex. 6.  Defendants have not contested the reasonableness of this figure, and the Court finds this amount is in line with amounts awarded in similar cases.  *See, e.g.*, *Annuity*, 3 F. Supp. 3d at 220 (awarding $10,162.00

in audit costs); *Gesualdi v. Andrews Trucking Corp.*, 2010 WL 2292392, at *1 (E.D.N.Y. June 3, 2010) (Townes, J.) (awarding $13,382.50 in audit costs).

Finally, Plaintiffs seek attorneys' fees incurred in the instant litigation. Pursuant to Section 502(g)(2)(D) of ERISA, courts must award reasonable attorneys' fees to a successful plaintiff in an ERISA suit. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs have requested they be permitted to submit a full accounting of their attorneys' fees and expenses following a decision on their motion for summary judgment. Pl. Reply Br. at 6. The Court grants Plaintiffs 60 days from the date of this order to do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. Plaintiffs are awarded damages, interest, and costs as follows: (1) $307,646.27 for unremitted fringe benefit contributions, (2) $35,193.68 for unremitted principal dues checkoffs, NYSPLAC and Organizer Funds contributions, (3) interest on the principal delinquency from the original date the contributions were due until the date upon which this order is entered, (4) $68,567.99 for liquidated damages, (5) $68,567.99 in audit costs, and (6) reasonable attorneys' fees and costs. The Court GRANTS Plaintiffs leave to file a full accounting of their attorneys' fees and costs.

**SO ORDERED.**

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 9, 2023
        Brooklyn, New York